236 Cal.App.2d 705 (1965)
46 Cal. Rptr. 249
LOU R. GETAS, Plaintiff and Appellant,
v.
ARTHUR WILLIAM HOOK et al., Defendants and Respondents.
Docket No. 21643.
Court of Appeals of California, First District, Division One.
August 20, 1965.
*708 Pratt & Berman, Jack K. Berman and Cyril Viadro for Plaintiff and Appellant.
Bledsoe, Smith, Cathcart, Johnson & Rogers, Robert A. Seligson, Clark, Heafey & Martin, Schofield & Cunningham, and Richard G. Logan for Defendants and Respondents.
SIMS, J.
Plaintiff appeals from a judgment entered on a jury verdict in favor of respondents Arthur William Hook and Pelacio Gabac, sued as Pete Gabac, in an action in which she sought to recover damages for personal injuries suffered in an automobile accident which she alleged was caused by the negligence of one or both of the defendants.
She complains that the trial court erred in failing to give an instruction offered by her on the theory of res ipsa loquitur, and in giving an instruction which advised the jurors not to draw an inference of negligence solely from the fact that an accident happened.
The facts bearing on these issues are as follows:
On the morning of January 5, 1961, appellant, a driver for the Bank of America, with one Avalon, a utility driver who accompanied her to learn her route, left Berkeley in the bank's car between 6 and 6:20 a.m. They proceeded out highway U.S. 40 to go to Vallejo via Carquinez Bridge. It was a foggy morning, but the patches of fog were not such as to impede her driving ability or speed. Appellant, who had been driving this route regularly for about a year, had never encountered ice on this road, but on this particular morning she first noticed ice on the highway shortly after leaving Berkeley, and subsequently around Pinole some 6 miles before the Carquinez Bridge. Her passenger also observed patches of ice.
Appellant left Berkeley in the innermost left lane and *709 proceeded at about 60 to 65 miles per hour until she reached Pinole and encountered icy patches. She then switched into the second lane and reduced her speed to 30 or 40 miles per hour. At the approach to the Carquinez Bridge the four lanes of the eastbound road were covered with ice, and appellant slowed to between 10 and 30 miles per hour.
The same morning respondent Gabac left his home in Concord to go to his work at Mare Island Shipyard, a trip he had made for some 13 years. He turned onto U.S. 40 at the Cummings Skyway intersection about 2,500 feet west of the bridge approach. He had never seen any ice on the road in all the years he had been making the trip, and the first time that he was aware that there was ice on the road was when he slipped on getting out of his car.
He entered the freeway and proceeded in the left inside lane at a speed of from 40 to 45 miles per hour. As he approached the bridge he overtook and passed the car of one Gallop, who was in the second lane behind appellant, at a speed of between 40 and 50 miles per hour. He then overtook appellant at a speed variously estimated from 5 to 10 miles per hour faster than appellant was traveling, or from 35 to 40 miles per hour.
After Gabac passed appellant his car skidded and he lost control of it. It spun around and finally came to rest so that its headlights were visible to the oncoming traffic. At least half of the car was in the lane to the extreme left. The extent, if any, to which it protruded into the next lane in which appellant was traveling is disputed. Meanwhile appellant had brought her car to a stop about 75 feet to the west of Gabac's car.
Airman First Class Gallop left his home in Richmond to go to his duties at Travis Air Force Base the same morning. He entered U.S. 40 and proceeded toward the bridge in the second lane from the left at a speed of about 35 to 40 miles per hour because it was a little foggy. He first noticed the tail lights of appellant's car when he came up to the approach of the bridge and continued 80 or 90 feet behind her at the same speed. He observed Gabac's car go out of control and saw appellant's brake lights go on. He applied his brakes and for the first time noticed and felt ice on the road as his wheels started to slide. He came to a stop about 8 to 15 feet behind appellant's vehicle.
Respondent Hook left his home to go to his place of employment west of Petaluma as a civilian with the Army. He had been making this trip regularly for a period of two years *710 and had never encountered ice on the road. He entered the highway and drove in the second lane from the left at speeds of from 45 to 60 miles per hour until he was between 1,500 and 2,500 feet away from the bridge when he turned into the extreme left lane and let his car decelerate from 45 miles per hour because of past experience with fog on the bridge. He never felt or observed any ice on the highway, but he was aware of cars ahead going at about the same speed which later proved to be those driven by appellant and Gallop. As he was slowing down to about 25 or 30 miles per hour he saw the headlights of the Gabac vehicle. He then returned to the next lane, and when he realized that the cars in front were stopped he applied his brakes. The back end of his car slid to the left, his car went out of control, and the left front of his car collided with the left rear of the Gallop vehicle, and came to rest 20 feet to the rear of it, facing back across the road.
Gallop had only been stopped a matter of seconds when he saw Hook's lights 40 or 50 feet behind and realized he was not going to slow up. The impact followed and his car was knocked into the car operated by appellant. That car had been stopped about one half a minute when the passenger heard a bang, which was followed by an impact which knocked the keys out of the ignition to the back of the seat, and sprung the front seat on the driver's side.
There is a conflict in the evidence as to whether or not any cars came by in the two lanes to the right of appellant after the Gabac vehicle came to rest. All cars were left operable and the parties drove off from the scene on instructions from a highway patrol officer.
An officer of the California Highway Patrol who was on duty that morning testified that he arrived on the scene and found the cars as they had come to rest. He was called to another accident on the westbound highway 3 miles west of the bridge at Hercules and on returning to Vallejo noticed ice on the highway at one location on the eastbound highway west of the Cummings overpass.
[1a] The instruction given by the court of which appellant complains reads as follows: "You are instructed that the mere fact that an accident happened, considered alone, does not prove that it was caused by the negligence of anyone."
[2a] The instruction offered and not given recited: "I instruct you that when an automobile which causes injury is under the exclusive control and management of a defendant and the accident is such as in the ordinary course of *711 things does not happen if those who have the control use ordinary care, it affords reasonable evidence in the absence of explanation by the defendant, that the accident arose from want of ordinary care. Therefore, if you find that defendants and/or each of them had exclusive control and management of their automobiles at the time of the accident in question, and that the said defendant's automobile collided with the rear end of another automobile which was standing still at the time of the collision, then I instruct you that the fact of the accident alone affords evidence in the absence of explanations, that it arose from a want of ordinary care on the part of said defendant in the operation and control of his said automobile."[1]
It is regrettable that counsel and court were not cognizant of and guided by the criticism voiced by the Committee on Standard Jury Instructions, Civil, of the Superior Court of Los Angeles County, and now found in the 1964 pocket parts of California Jury Instructions, Civil, at pages 79 and 80 under instructions No. 131 (Revised) and No. 131.1. In view of the difficulty in applying an instruction similar to that given in cases where the doctrine of res ipsa loquitur or a violation of a statute might be involved, the committee withdrew its approval of the giving of such an instruction. Whether one takes the view that a "mere fact"[2] instruction is necessary "to make clear to the jurors that it is not the mere happening of the accident, but is in the circumstances causing it, that fault and liability may be found" (Schauer, J. dissenting in Shaw v. Pacific Greyhound Lines (1958) 50 Cal.2d 153, 161 [323 P.2d 391]), or the view that such an instruction serves "no purpose except to confuse and mislead the jury" because human experience indicates that accidents do not generally happen unless someone is negligent (Carter, J., concurring in Phillips v. Noble (1958) 50 Cal.2d 163, 169 [323 P.2d 385]), the fact remains, as hereinafter appears, that regardless of its effect on the jurors, the instruction has *712 been a prolific source of appeals when given in cases where res ipsa loquitur or statutory violations are involved. It should therefore perhaps be given the decent burial suggested by the aforementioned committee.[3]
The difficulty of reconciling a "mere fact" instruction with the doctrine of res ipsa loquitur was apparently first noted in Ellis v. Jewett (1937) 18 Cal. App.2d 629, 634-637 [64 P.2d 432]. The subsequent history is reviewed and rules were crystallized in several opinions of the Supreme Court in 1958. [3] Where the uncontradicted evidence warrants the application of the doctrine of res ipsa loquitur it is error to give a "mere fact" instruction (Alarid v. Vanier (1958) 50 Cal.2d 617, 625 [327 P.2d 897]; followed in: Amar v. Union Oil Co. (1958) 166 Cal. App.2d 424, 427-429 [333 P.2d 449]; Persike v. Gray (1963) 215 Cal. App.2d 816, 820-822 [30 Cal. Rptr. 603]; and recognized in: Nevarov v. Caldwell (1958) 161 Cal. App.2d 762, 778-779 [327 P.2d 111]; Guerra v. Handlery Hotels, Inc. (1959) 53 Cal.2d 266, 270-273 [347 P.2d 674]; Williams v. Cole (1960) 181 Cal. App.2d 70, 74 [5 Cal. Rptr. 24]; Banes v. Dunger (1960) 181 Cal. App.2d 276, 280-282 [5 Cal. Rptr. 278]; DeMartini v. Alexander Sanitarium, Inc. (1961) 192 Cal. App.2d 442, 445-446 [13 Cal. Rptr. 564, 91 A.L.R.2d 383]; Winningar v. Bales (1961) 194 Cal. App.2d 273, 277-278 [14 Cal. Rptr. 908]; Puffinbarger v. Day (1962) 207 Cal. App.2d 540, 546-547 [24 Cal. Rptr. 533]; Houser v. Floyd (1963) 220 Cal. App.2d 778, 786 [34 Cal. Rptr. 96, 94 A.L.R.2d 1423]). [4] On the other hand where the application of the doctrine of res ipsa loquitur depends on the determination of disputed facts it is not error to give the controversial instruction if there has been no request for an instruction on the former doctrine. (Phillips v. Noble, supra, 50 Cal.2d 163, 166-168; followed in: Nevarov v. Caldwell, supra, 161 Cal. App.2d 762, 778-779; Williams v. Cole, supra, 181 Cal. App.2d 70, 74; Winningar v. Bales, supra, 194 Cal. App.2d 273, 277-278; and recognized in: Guerra v. Handlery Hotels, Inc., supra, 53 Cal.2d 266, 270-273; Banes v. Dunger, supra, 181 Cal. App.2d 276, 280-282; *713 Persike v. Gray, supra, 215 Cal. App.2d 816, 820-822; Houser v. Floyd, supra, 220 Cal. App.2d 778, 786.) [5, 6] In the latter situation, i.e., where there is evidence warranting the application of the doctrine of res ipsa loquitur but it is not applicable as a matter of law, it is recognized that where both instructions are given without an explanation, an order granting a new trial should be affirmed; and that the same result, affirmance of the order granting a new trial, should follow where the "mere fact" instruction was given, and an incomplete or erroneous instruction on the doctrine of res ipsa loquitur was offered and rejected, even though the trial court properly rejected the erroneous instruction and the judgment might otherwise have been affirmed because of the failure of the plaintiff to offer a proper instruction. (Shaw v. Pacific Greyhound Lines, supra, 50 Cal.2d 153, 156-158; followed in: Guerra v. Handlery Hotels, Inc., supra, 53 Cal.2d 266, 270-273 and recognized in: Amar v. Union Oil Co., supra, 166 Cal. App.2d 424, 427-429; Williams v. Cole, supra, 181 Cal. App.2d 70, 74; Houser v. Floyd, supra, 220 Cal. App.2d 778, 786.)
Where, as in this case, the "mere fact" instruction is given and a proposed erroneous instruction on res ipsa loquitur is refused, there is, as pointed out in Shaw, no abuse of discretion in granting the plaintiff a new trial even though the appellate court "would probably have affirmed the judgment under the rule" that it is not erroneous to give the "mere fact" instruction when no instruction is offered on the doctrine of res ipsa loquitur. (50 Cal.2d 153, 158.) Subsequent cases involving rejection of an erroneous res ipsa loquitur instruction have refused to reverse because of the giving of the "mere fact" instruction. (Rubenstein v. Ohrbach's Inc. (1959) 175 Cal. App.2d 630, 634-636 [346 P.2d 429]; Williams v. Cole, supra, 181 Cal. App.2d 70, 74 and Houser v. Floyd, supra, 220 Cal. App.2d 778, 786; and see also Kite v. Coastal Oil Co. (1958) 162 Cal. App.2d 336, 346 [328 P.2d 45] and Rayner v. Ramirez (1958) 159 Cal. App.2d 372, 381 [324 P.2d 83].) [7] Where, however, the offered and refused instruction on res ipsa loquitur should have been given, the combination of this error with the giving of the "mere fact" instruction compels a reversal. (Banes v. Dunger, supra, 181 Cal. App.2d 276, 280-282.)
Attention is therefore directed to the propriety of the instruction offered by appellant and rejected by the court.
[8] It is generally stated that the doctrine of res ipsa *714 loquitur applies "`"where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible."'" (Quintal v. Laurel Grove Hospital (1964) 62 Cal.2d 154, 164 [41 Cal. Rptr. 577, 397 P.2d 161]; and see Fowler v. Seaton (1964) 61 Cal.2d 681, 686 [39 Cal. Rptr. 881, 394 P.2d 697]; Shahinian v. McCormick (1963) 59 Cal.2d 554, 559 [30 Cal. Rptr. 521, 381 P.2d 377]; Di Mare v. Cresci (1962) 58 Cal.2d 292, 298 [23 Cal. Rptr. 772, 373 P.2d 860]; Faulk v. Soberanes (1961) 56 Cal.2d 466, 470 [14 Cal. Rptr. 545, 363 P.2d 593] and Guerra v. Handlery Hotels, Inc., supra, 53 Cal.2d 266, 271.) [9] The three classic conditions for the application of the doctrine have been summarized as follows: "First, that it is the kind of accident which ordinarily does not occur in the absence of someone's negligence; Second, that it was caused by an agency or instrumentality in the exclusive control of the defendant ...; and Third, that the accident was not due to any voluntary action or contribution on the part of the plaintiff." (BAJI No. 206B (Rev.); see also Shahinian v. McCormick, supra, 59 Cal.2d 554, 559; Faulk v. Soberanes, supra, 56 Cal.2d 466, 470; Guillory v. American President Lines (1964) 230 Cal. App.2d 296, 306 [40 Cal. Rptr. 796]; Khanoyan v. All American Sports Enterprises, Inc. (1964) 229 Cal. App.2d 785, 787-789 [40 Cal. Rptr. 596]; Rubenstein v. Ohrbach's Inc., supra, 175 Cal. App.2d 630, 635; Kite v. Coastal Oil Co., supra, 162 Cal. App.2d 336, 344; Rayner v. Ramirez, supra, 159 Cal. App.2d 372, 380.)
[10] If the evidence is insufficient to sustain findings that the conditions have been satisfied, the doctrine is inapplicable. (Guillory v. American President Lines, supra, 230 Cal. App.2d 296, 306-309.) [11] If the existence of the conditions or any of them depends on the resolution of conflicting facts, or the resolution of conflicting inferences from established facts, the determination of whether or not the conditions have been satisfied, and perforce, the application of the doctrine, must be left to the jury; and it is proper to refuse to give, and error to give, an unconditional instruction for the application of the doctrine under such circumstances. (Faulk v. Soberanes, supra, 56 Cal.2d 466, 470; Shaw v. Pacific Greyhound Lines, supra, 50 Cal.2d 153, 158; Houser v. Floyd, supra, 220 Cal. App.2d 778, 783-785; Rubenstein v. Ohrbach's, Inc., supra, 175 Cal. App.2d 630, 634-636; Kite v. Coastal Oil Co., supra, *715 162 Cal. App.2d 336, 343-345; Rayner v. Ramirez, supra, 159 Cal. App.2d 372, 380-381.)
[12] Appellant relies upon the statement that "The rule is clear that if there is undisputed evidence plaintiff's stationary vehicle was struck from the rear by the defendant's moving vehicle, res ipsa loquitur applies as a matter of law." (Ponce v. Black (1964) 224 Cal. App.2d 159, 162 [36 Cal. Rptr. 419]; Alarid v. Vanier, supra, 50 Cal.2d 617, 625; Persike v. Gray, supra, 215 Cal. App.2d 816, 820; Merry v. Knudsen Creamery Co. (1949) 94 Cal. App.2d 715, 721 [211 P.2d 905]; Slappey v. Schiller (1931) 116 Cal. App. 274, 276 [2 P.2d 577]; and Bauhofer v. Crawford (1911) 16 Cal. App. 676, 679 [117 P. 931]; and see Sweeney v. Pozarelli (1964) 228 Cal. App.2d 585, 591 [39 Cal. Rptr. 601]; and Larson v. Solbakken (1963) 221 Cal. App.2d 410, 427 [34 Cal. Rptr. 450].)
It has also been suggested on the basis of Cartmill v. Arden Farms Co. (1948) 83 Cal. App.2d 787, 789 [189 P.2d 739], which recites: "[E]vidence that a moving vehicle has collided with another moving vehicle ahead of it furnishes at least some proof of negligence on the part of the driver of the colliding vehicle," that the plaintiff in the front vehicle should be entitled to an instruction to that effect. (Banes v. Dunger, supra, 181 Cal. App.2d 276, 282.) This contention and the cases on which it is predicated have been thoroughly reviewed by this court which concluded: "Accordingly, where the rule we have been discussing is applicable in a given case, a proper instruction should be couched either in language to the effect that where a moving vehicle has collided with another moving vehicle ahead proceeding in the same direction an inference of negligence arises in the absence of any explanation for the collision [citations], or, in terms of an appropriate res ipsa loquitur instruction. [Citation.]" (Larson v. Solbakken, supra, 221 Cal. App.2d 410, 427; and see Kramer v. Barnes (1963) 212 Cal. App.2d 440, 447-448 [27 Cal. Rptr. 895].) In each of these cases it was recognized that "whether the driver in the rear was negligent in colliding with the vehicle in front is essentially a question of fact and not of law and is dependent upon the circumstances surrounding the happening of the accident." (Larson v. Solbakken, supra, at p. 424; Kramer v. Barnes, supra, at p. 448; and see Davis v. Ewen (1957) 148 Cal. App.2d 410, 413-414 [306 P.2d 908].)
[13] It is concluded similarly that the circumstances must determine whether or not the doctrine of res ipsa loquitur should be applied unqualifiedly, as a matter of law, or conditionally as the facts may be resolved by the jury.
*716 Turning to the requirement that the accident is one which ordinarily does not occur in the absence of someone's negligence the cases reflect that where the doctrine has been stated to be applicable as a matter of law the front vehicle had legally stopped for a traffic control device (Ponce, Alarid, Persike and Merry), or was legally parked at the curb (Slappey and Bauhofer and see Prosser, Res Ipsa Loquitur in California 37 Cal.L.Rev. (1949) 183, 204-208 and Note 151 A.L.R. 876). In Banes v. Dunger, supra, 181 Cal. App.2d 276 where error was found in the refusal to give the instructions, the front vehicle was similarly stopped in traffic backed up from a signal light. The proffered instruction is not set forth but it is referred to as being "on the theory of qualified res ipsa loquitur." (181 Cal. App.2d at p. 280.) Here the uncontradicted evidence reflects that plaintiff was stopped in the traveled lane of a four-way highway which was covered by a sheet of ice. If the jury found that the collision was not caused by respondent Hook's management of his automobile but wholly by reason of the ice which prevented the application of the brakes from stopping the car before the collision as they would normally have done, the res ipsa loquitur doctrine would not have been applicable. (Williams v. Cole, supra, 181 Cal. App.2d 70, 74; and see Lawrence v. Butler (1926) 79 Cal. App. 436, 440 [249 P. 840].) Another possibility is that Hook did all that could be required under the circumstances, and that the sole fault was that of Gabac who set in motion the events giving rise to the accident. (See Faulk v. Soberanes, supra, 56 Cal.2d 466, 470 as to the possibility of negligence of a third person either in crossing the center line or having bright headlights; as to the effect of being blinded by the sun, see Binns v. Standen (1931) 118 Cal. App. 625, 627 [5 P.2d 637]; and for where a driver is trying to avoid an accident see Creamer v. Cerrato (1934) 1 Cal. App.2d 441, 444 [36 P.2d 1094].)
Similarly there may be a question as to whether the required control was present, if conditions such as ice, which the driver had no reason to suspect (a factual question in this case), deprived him of that control without fault on his part. (See Barrera v. De La Torre (1957) 48 Cal.2d 166, 170 [308 P.2d 724] which suggests a conditional instruction where defendant asserts that he lost control because of the negligence of a third person.)
Finally, although the fact that an issue is raised as to contributory negligence does not preclude the application of the res ipsa loquitur doctrine. (Shahinian v. McCormick, supra, *717 59 Cal.2d 554, 560-561), it would be improper to apply the doctrine unconditionally if there were any evidence to show that plaintiff contributed to the accident. (Houser v. Floyd, supra, 220 Cal. App.2d 778, 785-786; DeMartini v. Alexander Sanitarium, Inc., supra, 192 Cal. App.2d 442, 446; Rubenstein v. Ohrbach's, Inc., supra, 175 Cal. App.2d 630, 635; Kite v. Coastal Oil Co., supra, 162 Cal. App.2d 336, 345; Nevarov v. Caldwell, supra, 161 Cal. App.2d 762, 779; Rayner v. Ramirez, supra, 159 Cal. App.2d 372, 380.) Here a question was raised and presented to the jury as to whether plaintiff properly stopped in the middle of the highway or whether she should have attempted to proceed or pull to the right to avoid creating a further hazardous condition. (See Veh. Code, §§ 22500, subd. (j), 22502, 22504 and 22520 and Note 79 A.L.R.2d 153.)
[2b] From the foregoing it is concluded that under the circumstances of this case appellant was only entitled to a qualified instruction on the doctrine of res ipsa loquitur. Giving to the instruction quoted a liberal construction, it may be said to provide for the question of whether the driver had control of the vehicle. It fails, however, to rule out any contribution on appellant's part, and fails to give any consideration to the part that ice, and the conduct of Gabac may have played in the accident. For these reasons it was properly refused.
[1b] From what has been said it is also apparent that the doctrine of res ipsa loquitur was not applicable as a matter of law, and therefore no error can be predicated upon the giving of the "mere fact" instruction on this ground.
[14] Insofar as respondent Gabac is concerned, it is manifest that the instruction offered is not applicable. For this reason alone, its improper plural phraseology would justify its rejection as to both respondents. (Williams v. Cole, supra, 181 Cal. App.2d 70, 73 and cases cited; and see Faulk v. Soberanes, supra, 56 Cal.2d 466, 470, 471; and Shaw v. Pacific Greyhound Lines, supra, 50 Cal.2d 153, 158 and cf. Keena v. Scales (1964) 61 Cal.2d 779, 783 [40 Cal. Rptr. 65, 394 P.2d 809] as to the adequacy of an instruction.
[15] It is urged that the "mere fact" instruction was erroneously applied to him as his loss of control of his vehicle was a fact which gave rise to the doctrine of res ipsa loquitur as a matter of law. (See Amar v. Union Oil Co., supra, 166 Cal. App.2d 424, 428.) Suffice it to say that in that case instructions were offered and given on the issue and it was held proper to grant a new trial because of the resulting confusion, and because instructions were given on unavoidable accident. *718 Whether or not the giving of the "mere fact" instruction standing alone would have required a reversal was not before the court.
Here Gabac was not party to the collision. He had no control over the instrumentality which caused the injuries to appellant. If it be assumed that an instruction would have been proper on the question of inferring his negligence from loss of control of his car, such an instruction would have to be qualified to set forth the necessity that such negligence be a proximate cause of the ensuing injury. In any event, the mere fact that appellant's vehicle was struck by another vehicle did not make Gabac negligent, the most it could do is to give reason to explore whether Gabac was negligent and if so whether such negligence was a proximate cause of the injuries she suffered.
[16] It is further asserted that giving the "mere fact" instruction was prejudicial error because it should not be given where a presumption of negligence may arise from a defendant's violation of a statute. (Alarid v. Vanier, supra, 50 Cal.2d 617, 625; Wickesser v. Burns (1965) 232 Cal. App.2d 344, 347 [42 Cal. Rptr. 856]; Luna v. Tecson (1964) 227 Cal. App.2d 655, 661-662 [39 Cal. Rptr. 24]; Beeks v. Joseph Magnin Co. (1961) 194 Cal. App.2d 73, 76 [14 Cal. Rptr. 877]; and Smith v. Sugich Co. (1960) 179 Cal. App.2d 299, 309-310 [3 Cal. Rptr. 718].) Smith and Beeks both recognize the distinction between the situation where the uncontradicted evidence shows violation of a statute without justification or excuse (violation of former Veh. Code, § 540, subd. (a) in Smith and Luna) and the situation where the evidence of a violation of a statute is conflicting and the application of the presumption depends upon a factual determination by the jury. (Violation of former Veh. Code, § 560, subd. (a) in Smith, §§ 670, subds. (a) and (c) and 679 in Alarid, and new § 21801 in Wickesser.) Beeks suggests that in the latter situation there is no error in giving the "mere fact" instruction by analogy to cases which have held it not erroneous to give the instruction with a conditional res ipsa loquitur instruction. (Middleton v. Post Transportation Co. (1951) 106 Cal. App.2d 703, 705 [235 P.2d 855], cited with approval in Barrera v. De La Torre, supra, 48 Cal.2d 166, 171; and see Rubenstein v. Ohrbach's Inc., supra, 175 Cal. App.2d 630, 634-635; Amar v. Union Oil Co., supra, 166 Cal. App.2d 424, 428-429; Silva v. Pacific Greyhound Lines (1953) 119 Cal. App.2d 284, 287-288 [259 P.2d 743]; Bazzoli v. Nance's Sanitarium, Inc. (1952) 109 Cal. App.2d 232, 240-241 [240 P.2d 672]; Seedborg v. Lakewood *719 Gardens etc. Assn. (1951) 105 Cal. App.2d 449, 455-456 [233 P.2d 943].)
Smith, however, turns to the criticism in Guerra (53 Cal.2d 266, 272-273) which led to the conclusion that the "mere fact" instruction should not be given even in those cases where the application of the res ipsa loquitur doctrine is dependent upon a determination of the factual issues, and concludes that it is error to give that instruction even where the application of the presumption of negligence from violation of a statute depends on a factual determination.
For the reasons set forth in the latter cases it is concluded that it is error to give the "mere fact" instruction where violation of a statute is an issue in the case. In this case the jurors were charged in the language of section 22350 of the Vehicle Code and told: "A violation of this basic rule is negligence."[4] They were also charged with the language of section 21703, following too closely, of the presumption arising therefrom, and the evidence necessary to overcome it.[5] [17] The question remains whether the contradiction indicated by the cases last referred to constituted prejudicial error. Immediately preceding the instructions just quoted, the court gave a general instruction on the duty of anyone using a public street.[6]
*720 The jurors were further instructed as to presumptions, and particularly on a presumption of knowledge of obvious danger.[7]
After instructions generally defining the burden of proof, negligence, contributory negligence, and proximate cause, the court gave the instruction first set forth herein. It was preceded by equally confusing language[8] to which no objection has been made, presumably because it tended to free appellant as well as respondents from negligence. There follow instructions on the right to rely on lawful conduct of others, and on imminent peril and further general instructions on inferences and presumption before those specifically dealing with the specific obligations of drivers which have been set out above.
Of the cases discussed most closely in point the only reversal occurred in Persike (215 Cal. App.2d 816, 821-822) wherein it was pointed out: "We believe the error was prejudicial because: (1) The jury was foreclosed, by being told that the inference of negligence did not arise from the accident, from deducing, as reasonable persons might deduce without the assistance of a doctrine bearing a Latin title, that a stationary vehicle is not ordinarily struck from behind unless there has been negligence. (2) There was no other instruction given which would be of assistance to plaintiffs, such as were given in Alarid v. Vanier, supra. (3) The case had to be decided on the single point of defendant's negligence, there being no culpability on plaintiff's part, such as contributory negligence *721 or assumption of risk, and on this single issue the charge to the jury unduly emphasized plaintiffs' burden of proof, as explained below"; and in Banes (181 Cal. App.2d 276, 283) where the number of erroneous instructions given, coupled with the failure to give properly qualified res ipsa loquitur instructions, made a new trial necessary. Here the jurors by the instructions given were granted full rein to explore the possibilities that the accident was caused by Hook's lack of perception, his speed, or his failure to leave sufficient distance between his car and that of Gallop. If the jurors found that he complied with his duties in regard to these matters the jurors of necessity found some other explanation for the accident. If they found appellant was contributorily negligent, any errors in instructing regarding Hook's negilgence could not be prejudicial. It would be presumptuous to assume that in considering those issues that the jurors because of the "mere fact" instruction blinded themselves to the fact that a collision occurred. It is manifest that the circumstances of the collision along with all other facts must have been considered in determining culpability. Appellant can ask no more. No prejudicial error appears. (Alarid v. Vanier, supra, 50 Cal.2d 617, 625; Davis v. Ewen, supra, 148 Cal. App.2d 410, 415-417.)
The judgment is affirmed.
Sullivan, P.J., and Molinari, J., concurred.
NOTES
[1] By stipulation the record was augmented to show that this instruction was proposed by appellant and rejected by the trial court, and that appellant had not offered the instruction of which complaint is now made.
[2] As given in the instant case the instruction is revised from an earlier form which read: "The mere fact that an accident happened, considered alone, does not support an inference that some party [sometimes "person"], or any party, to this action was negligent." (BAJI (1956) No. 131, p. 302.) It has been held that there is no substantial difference in the effect of the instruction insofar as the problem at hand is concerned. (Houser v. Floyd (1963) 220 Cal. App.2d 778, 786 [34 Cal. Rptr. 96, 94 A.L.R.2d 1423]; see also Puffinbarger v. Day (1962) 207 Cal. App.2d 540, 547 [24 Cal. Rptr. 533].)
[3] The suggestion which is contained in Hardin v. Elvitsky (1965) 232 Cal. App.2d 357, 377 [42 Cal. Rptr. 748] that each party is entitled to an instruction embodying the declaration contained in BAJI No. 131 must be viewed in its context. It may generally be improper in cases where contributory negligence is an issue to give the instruction in reference to the negligence of one party, plaintiff or defendant, and not in reference to the other. It does not, however, necessarily follow that it would be improper to refuse it to both. (See, however, Kite v. Coastal Oil Co. (1958) 162 Cal. App.2d 336, 346 [328 P.2d 45].)
[4] This instruction reads in full: "The speed at which a vehicle travels upon a highway, considered as an isolated fact and simply in terms of so many miles an hour, is not proof either of negligence or of the exercise of ordinary care. Whether that rate of speed is a negligent one is a question of fact, the answer to which depends on all the surrounding circumstances. The basic speed law of this state as provided by Section 22350 of the Vehicle Code is as follows: `No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent, having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.'"
[5] This instruction reads: "Section 21703 of the Vehicle Code provides that `The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon, and the condition of, the roadway.'

"If a party to this action violated Code Section 21703 just read to you, a presumption arises that he was negligent. That presumption is not conclusive. It may be overcome by evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable or justifiable. To prove that a violation of Vehicle Code Section 21703 such as that charged in this case was excusable or justifiable, so as to overcome the presumption of negligence, the evidence must support a finding that the person who violated this section did what might reasonably be expected of a person of ordinary prudence who desired to comply with the law, acting under similar circumstances."
[6] This instruction reads: "It is the duty of the driver of any vehicle using a public street or highway to exercise ordinary care to avoid placing himself or herself or another person in danger; to use like care to avoid an accident from which injury might result; to be vigilant at all times, keeping a lookout for traffic and other conditions to be reasonably anticipated; and to keep the vehicle under such control that, to avoid a collision with any person or with any other object, he or she can stop as quickly as might be required of him or her by eventualities that would be anticipated by an ordinarily prudent driver in like position."
[7] This instruction reads: "A presumption is a deduction which the law expressly directs to be made from particular facts. It is evidence and continues until and unless overcome by contrary evidence. There are certain fundamental principles applicable to cases of this nature, which the law imposes and which are based on common sense, among which are the following: (1) One cannot go from a place of safety into a place of danger without using his or her eyes and ears to see or hear anything that might be a source of danger to such person. If the danger is visible and obvious, the law will presume that a person possessing the normal faculties of sight and hearing, must have seen and heard that which was within range of his sight and hearing, and that he had knowledge of such danger, if any: (2) There is also a presumption that a person intends the ordinary consequences of his voluntary act. These presumptions are denominated rebuttable or disputable presumptions, and are satisfactory evidence if uncontradicted by other satisfactory evidence in the case."
[8] This instruction reads: "In a case as here presented, there is no legal presumption of negligence on the part of the defendants, or of contributory negligence on the part of the plaintiff. Such matters are facts, which like other material facts alleged by any party must be proved by the party upon whom rests the burden of proof."